386 A.2d 513

**COMMONWEALTH of Pennsylvania**

v.

**William FULTZ, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1977.

Decided April 28, 1978.

208

Samuel Kagle, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Charles A. Klein, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, William Fultz, was tried by a judge sitting with a jury and was convicted of murder of the first degree. Post-verdict motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

The facts are as follows. At approximately 9:00 p. m. on December 12, 1974, Maryann O'Bryant was walking in the 3100 block of West Page Street, Philadelphia. She saw Gary Johnson walk to the corner of 32nd and West Page and look around. Immediately thereafter, she and her companions met appellant and Calvin Martin. At the time, O'Bryant saw a brown wooden object under appellant's jacket. Mar-

tin and appellant then walked in the direction of 3125 West Page Street.

Joanne Cox, who lived at 3125 West Page Street, testified that around 9:00 p. m., she was in her house talking to Jonathan Kent, the victim, when Edgar Greenwood entered. Greenwood walked into the kitchen and told Cox he would like to speak with her privately. He asked Cox about her relationship with the victim, Jonathan Kent, and she replied that they were good friends. Cox asked Greenwood why he wanted to know and Greenwood replied that she would soon be dating him (Greenwood). When Cox and Greenwood re-entered the livingroom, Kent left the house through the front door. While on the porch, Kent was shot and killed by assailants using a shotgun and a .38 caliber pistol. When the shooting occurred, Greenwood ran out the backdoor of the Cox house.

After the shots were fired, O'Bryant saw appellant with Martin and Johnson running on Page Street. She noticed Johnson throwing away a pistol and appellant discarding a shotgun. The handle of the shotgun was the same color as the brown object O'Bryant had seen under appellant's coat. Appellant, Martin and Johnson got in an automobile and drove away.

■ Appellant argues first that the evidence was insufficient to sustain his conviction for murder of the first degree. We do not agree.

In *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975), we stated:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-find-

er is free to believe all, part, or none of the evidence.
. . . " (Citations omitted.)

In light of this standard, we believe the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of murder of the first degree. Act of December 6, 1972, P.L. 1482, No. 334, § 1, as amended March 26, 1974, P.L. 213, No. 46, § 4, 18 Pa.C.S.A. § 2502.

■ Following trial, appellant's trial counsel filed boiler plate post-verdict motions challenging only the sufficiency of the evidence. Counsel attempted to raise other issues, but the trial court properly refused to consider them because of Pa.R.Crim.P. 1123(a) and our decision in *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). On appeal, appellant is represented by different counsel and now challenges trial counsel's effectiveness. *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975). Appellant's allegations of his trial counsel's incompetence deal with the failure to include certain allegations of error in written post-verdict motions.

In *Commonwealth v. Rice,* 456 Pa. 90, 318 A.2d 705 (1974), this court held that counsel is not ineffective for failing to raise baseless or frivolous issues. With this standard in mind, we will discuss appellant's claims concerning his trial counsel's effectiveness.

■ Appellant argues that trial counsel was ineffective for failing to include in written post-verdict motions an objection to the alleged hearsay of certain portions of Cox's trial testimony. The questioned evidence involves Cox's testimony about the conversation between Greenwood and herself in the kitchen of her home. As previously stated, Cox testified that Greenwood asked about her relationship with Kent and then announced that she would soon be dating him (Greenwood). Appellant believes that this testimony was hearsay and thus excludable. We do not agree.

In *Commonwealth v. Wright,* 455 Pa. 480, 485, 317 A.2d 271, 273 (1974), we stated: "The hearsay rule does not apply

to all statements made to or overheard by a witness, *but only those statements which are offered as proof of the truth of what is said."* (Emphasis added.) In this case, the statement was not introduced to prove the truth of the matter asserted, i. e., that Cox would be dating Greenwood in the future. The statement was admitted rather to prove that the killing was one of "lying in wait," [1] thus making the crime murder of the first degree.

The Commonwealth's theory in this case was that Greenwood was acting in concert with appellant, Johnson and Martin in the killing of the victim. The Commonwealth argued, and the argument is supported by the evidence and its reasonable inferences, that Greenwood's role was to lure Kent out the front door of Cox's house where appellant and Martin were waiting with the shotgun and .38 caliber pistol. Greenwood's statement was introduced merely to prove that the statement was made and to bolster the Commonwealth's theory of the killing, and not for the truth of the matter asserted. As such, the statement was not hearsay and was thus, properly admitted. *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967).

Appellant next argues that trial counsel was ineffective in failing to preserve for appellate review various instances of alleged prosecutorial misconduct, thus entitling appellant to a new trial. Appellant complains of various instances of misconduct during the prosecutor's opening remarks. Appellant argues that in two instances, the prosecutor made remarks which were not supported by the record. During his opening statement, the prosecutor indicated that appellant and his cohorts had "set a trap" to murder the victim. Appellant claims the record does not support such statement, but this argument is frivolous. As previously indicated, the Commonwealth was justified in advancing this argument, since Greenwood's statement to Cox supports such an argument. As the evidence does support the claim made in the

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 2501.

prosecutor's opening, trial counsel was not ineffective in failing to include this claim in written post-verdict motions.

■ At another portion of his opening, the prosecutor stated:

" . . . You will hear from a man by the name of Anthony Brothers. He will tell you the reason for this shooting. . . . So, ladies and gentlemen of the jury, you will hear a classic case of first degree murder. . . "

Since Anthony Brothers never testified, appellant argues that he is entitled to a new trial, based on our decision in *Commonwealth v. Fairbanks,* 453 Pa. 90, 306 A.2d 866 (1973). We do not agree.

In *Fairbanks, supra,* 453 Pa. at 95, 306 A.2d at 868, we stated:

"The prosecutor's remarks in his opening statement must be 'fair deductions from evidence expected to be presented.' His remarks cannot be 'mere assertions intended to inflame the passions of the jury.' *Commonwealth v. Meyers,* 290 Pa. 573, 580, 139 A. 374, 377 (1927); *Commonwealth v. Hoffman,* 439 Pa. 348, 354, 266 A.2d 726, 730 (1970).

"The American Bar Association Standards for Criminal Justice provide the following standard for the prosecutor: '*In his opening statement the prosecutor should confine his remarks to evidence he intends to offer which he believes in good faith will be available and admissible and a brief statement of the issues in the case. It is unprofessional conduct to allude to any evidence unless there is a good faith and reasonable basis for believing that such evidence will be tendered and admitted in evidence.*' ABA Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function, § 5.5 (Approved Draft, 1971).

"In his opening statement, the prosecutor should be scrupulous to avoid any utterance he cannot support later

with such evidence. ABA Standards, supra, Commentary to § 5.5." (Emphasis added.)

We find no violation of the *Fairbanks* mandate.

In the instant case, the prosecutor intended to call Brothers, who would have testified that two weeks before the homicide, Calvin Martin, Gary Johnson and other unknown individuals entered the residence of Brothers and Kent and robbed the pair. During the robbery, Brothers and Kent got into a fistfight with the robbers. A few days later, Martin and appellant entered a barbershop where Brothers was sitting, apparently looking for Kent and Brothers. After showing Brothers a shotgun under Martin's coat, the pair left the barbershop and shot and killed Brothers' dog, which had been tied up outside the barbershop.

When Brothers was called to testify, appellant requested an offer of proof. The prosecutor told the court that since appellant was an associate of Martin and Johnson, he believed Brothers' testimony would show that the killing of Kent was in response to the fistfight at the original robbery. The trial court, however, refused to allow Brothers' testimony because appellant was not present at the original robbery. While we do not express an opinion on the propriety of the trial court's ruling, we believe the prosecutor's opening statement was made in good faith, based on a reasonable belief that the evidence was admissible. Trial counsel therefore was not ineffective for failing to include this claim in post-verdict motions.

Appellant next argues that the prosecutor overstepped his bounds in his opening address when he told the jury that the slaying was accomplished by "ambush" while "lying in wait." Appellant believes such an argument was not supported by evidence. As previously discussed, however, we believe it was reasonable to classify the circumstances surrounding this slaying as an ambush. Counsel was not ineffective for failing to include this claim in written post-verdict motions.

Appellant next argues that counsel was ineffective in failing to include in written post-verdict motions allegations

of error concerning certain "prejudicial" remarks by the prosecutor about "gangs." We do not agree.

■ During his opening address, the prosecutor told the jury that the victim's aunt would testify that the victim was not a member of any gang. After objection, the court gave a cautionary instruction which satisfied defense counsel. No motion for a mistrial was made. Under these circumstances, the trial court's instruction cured any prejudicial effect. *Commonwealth v. Whitfield*, 474 Pa. 27, 376 A.2d 617 (1977). To include this argument in post-verdict motions would have been a futile gesture. Appellant's claim is thus meritless.

■ Appellant next argues that counsel was ineffective for failing to include in post-verdict motions an allegation of error concerning the testimony of Philadelphia police officer John Pender. We do not agree. One of the first police officers to arrive at the scene of the shooting was Officer John Pender. When questioned at trial as to his assignment within the police force, Pender testified that he was assigned to gang control within the Juvenile Aid Division. The trial court overruled appellant's objection. As the prosecutor never argued that the slaying was gang related, we can see no harm in the testimony. Appellant's trial counsel was thus not ineffective for failing to include this claim in written post-verdict motions.

During the trial, appellant and his accomplices were referred to by their nicknames. Appellant contends that these references allowed the jury to infer that Kent's slaying was gang-related and, therefore, the references were prejudicial. Appellant claims that his counsel was ineffective in failing to include these occurrences in post-verdict motions. We do not agree.

■ We do not believe that merely because appellant and his accomplices were referred to by their nicknames, does the inference logically flow, as appellant contends, that a nickname denotes gang activity. Moreover, the prosecutor never argued to the jury nor was any evidence presented to the jury that the slaying was gang-related. Given the above

considerations, the failure to include the allegation of error in post-verdict motions was not ineffective assistance of counsel.

█ Appellant next contends that his trial counsel was ineffective for failing to include in post-verdict motions an alleged instance when the prosecutor expressed his opinion on the credibility of Commonwealth witness Maryann O'Bryant. During his closing argument, defense counsel sought to discredit O'Bryant's testimony by pointing to various circumstances which allegedly showed she was not a believable witness. Defense counsel then asked:

"Why would she come down here and tell you about that the way she did? Why would she testify? Now, I don't know what Mr. Murray [the District Attorney] is going to say about that. Maybe he will say, well, she had the determination to tell the truth and she came up and stood before all of you and said it."

During his summation, the prosecutor argued that O'Bryant was neither a "tramp" nor a "bum," and then went on to state:

" . . . You decide and you determine whether he's guilty or not guilty, and I tell you sincerely if you believe, and there were inferences and hints added in the cross-examination of Maryann O'Bryant, if you believe that I put her up to lie on the stand or she lied to you during the course of her examination, then you should find this defendant not guilty and not even leave the jury box. But again I ask you to ask yourselves, why would she lie? Why would she say what she did in this particular case? Why?"

Appellant moved for a mistrial, which was denied. The court, however, gave the following cautionary instruction:

" . . . If, during the course of the District Attorney's address to you you may have felt that he might have rendered his opinion as to any of the evidence in the case you are to disregard such statements as to his opinion. The determination of the evidence in the case is for the Jury. The characterization of testimony and the opinion

as to the testimony by the District Attorney should be disregarded. If he did, you disregard those statements."

Appellant now contends trial counsel was ineffective in failing to include this claim in post-verdict motions. We do not agree.

In *Commonwealth v. Stasko*, 471 Pa. 373, 386, 370 A.2d 350, 357 (1977), we stated:

" . . . We have made it 'emphatically clear that expression of personal belief has no place in the argument of a district attorney to the jury.' *Commonwealth v. Russell*, 456 Pa. 559, 563, 322 A.2d 127, 130 (1974). When prejudicial remarks are made by the prosecution, however, the trial judge may, under certain circumstance and if the impropriety is timely brought to the court's attention, correct the error. 'Indeed, control of the prosecution's comments is largely delegated to the discretion of the trial judge.' *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740, 741 (1971). Here, the indiscretion was quickly noted by objection and curative instructions were delivered. The question remains whether the instructions adequately protected the rights of the accused. In *Commonwealth v. Russell,* supra, we held that the trial judge's instruction to the jury was insufficient to erase the prejudice of a witness' testimony. There, the witness testified as to the guilt or innocence of the defendant and also expressed his opinion that all the defense witnesses were lying. Compared with those comments, the single irresponsible remark of the prosecutor in this case was of a less prejudicial nature and, certainly, curable. The remark was not directed to the guilt or innocence of the accused. Nor did the prosecutor blanketly attack the appellant's credibility. Under the circumstances, we find that the trial judge's instructions were sufficient to assure the appellant of a fair and impartial trial. See *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975)."

Assuming, *arguendo,* that the complained of portion of the district attorney's summation was an opinion on credibility, we believe *Stasko* is indistinguishable from the instant case

and thus find no ineffectiveness for failing to include this argument in post-verdict motions.

Appellant's final allegation of ineffective assistance of trial counsel concerns the failure of counsel to request a charge on murder of the second degree. At the time of this homicide, murder was divided into three degrees, with murder of the second degree encompassing the felony-murder doctrine. Act of December 6, 1972, P.L. 1482, No. 334, § 1, as amended, Act of March 26, 1974, P.L. 213, No. 46, § 4, 18 Pa.C.S.A. § 2502(b).

In this case, there was no evidence of any underlying felony and the Commonwealth told the judge and jury it would not seek the death penalty. After convicting appellant of murder of the first degree, the jury was instructed by the trial court to set the penalty at life imprisonment and this instruction was followed.

Since murder of the second degree would have been a compromise verdict, we fail to see how its submission to the jury could have helped appellant. Even if the jury had reached a verdict of murder of the second degree, appellant would still have received the same life sentence, as a conviction for murder of the second degree also carries a life sentence. We thus find appellant's claim to be meritless.

Having found sufficient evidence to sustain appellant's judgment of sentence for murder of the first degree and having determined that trial counsel was not ineffective in failing to include meritless and frivolous issues in written post-verdict motions, the judgment of sentence is affirmed.

POMEROY, J., joins in this opinion and also files a concurring opinion.

ROBERTS, NIX and MANDERINO, JJ., concur in the result.

PACKEL, J., took no part in the decision of this case.

POMEROY, Justice, concurring.

I join in the opinion of Mr. Justice O'Brien. I take this opportunity, however, to reemphasize briefly what I perceive

to be the function of an appellate court in resolving questions of ineffective representation of counsel first raised on direct appeal.

In the case at bar appellant, through new appellate counsel, alleges that trial counsel was ineffective in that he failed to include in his motion for a new trial a number of reasons in support of that relief. Because such grounds for a new trial were not included in the motion, the merits of these points could not be presented to the trial court, sitting en banc, at the post verdict stage and cannot now be presented to this Court. See *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). All that is properly before us is whether or not this failure to present certain reasons in support of the motion for a new trial was so serious a dereliction as to deny appellant his constitutional right to effective representation by counsel.*

Whether counsel was constitutionally ineffective necessarily involves an analysis of the trial situation and of the alternatives which the lawyer for the defendant had available to him. We recently had occasion to consider our approach to this analysis in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). What we there said bears repeating:

> "In resolving this contention we are guided by the standard set forth in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):
>
>> '[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests.'

---

* Because new counsel raised the issue of the preceding counsel's effectiveness at the first stage in the proceedings immediately following the replacement of prior counsel, that issue is properly preserved for review in this Court. *See*, e. g., *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Smallwood*, 465 Pa. 392, 350 A.2d 822 (1976); *Commonwealth v. Carter*, 463 Pa. 310, 344 A.2d 846 (1975).

The initial factor which must be considered in applying this reasonable basis standard is whether the claim which post-trial counsel is charged with not pursuing had some reasonable basis. In *Maroney* we noted that 'a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized.' *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8. Because counsel does not forego an alternative which offers a substantially greater potential for success when he fails to assert a baseless claim, counsel cannot be found to have been ineffective for failing to make such an assertion. See, e. g., *Commonwealth v. Nole*, 461 Pa. 314, 336 A.2d 302 (1975); *Commonwealth v. Harrison*, 228 Pa.Super. 42, 323 A.2d 848 (1974); cf. *Commonwealth v. Goosby*, 461 Pa. 229, 336 A.2d 260 (1975); *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974). It is only when the claim which was foregone was of arguable merit that we must make an inquiry into the basis for the post-trial counsel's decision not to pursue the matter. Thus the starting point of our inquiry is whether there were reasonable grounds upon which to advance the two claims which were not advanced in the motion for a new trial.

"We emphasize that our analysis of the abandoned claim is undertaken solely for the purpose of resolving questions of ineffective representation. Not having been raised in post-trial motions, the claim itself has not been properly preserved for appellate review. See, e. g., *Commonwealth v. Carter*, 463 Pa. 310, 344 A.2d 846 (1975). Rather, once we conclude that the omitted contention is of arguable merit, our inquiry into the substance of the claim ceases and shifts to an analysis of post-trial counsel's basis for decision. If it cannot be determined from the record whether a satisfactory basis for the omission exists then a remand for an evidentiary hearing on that question is proper. See, e. g., *Commonwealth v. Moore*, 466 Pa. 510, 353 A.2d 808 (1976); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). If, on the other hand, we can

determine from the record that counsel was ineffective then the appropriate remedy would be to grant appellant the right to file post-trial motions nunc pro tunc. We do not decide the issue which counsel was ineffective in failing to preserve." 472 Pa. at 277–78, 372 A.2d at 695–696 (1977). (footnote omitted).

Although the majority omits to cite to *Hubbard*, I understand its resolution of the issues to be in harmony with it. That is, I view the majority opinion as determining only that counsel is not to be deemed ineffective for failing to raise issues devoid of merit, and that it does not purport to decide the merits of the issues not preserved. With this result I am in agreement. If, however, we were to conclude that the omitted contentions might be of some substance, i. e., were "arguably meritorious", the proper disposition for this Court to make would be to remand to the trial court for either an evidentiary hearing as to counsel's strategy or for the filing of post-trial motions nunc pro tunc. If we were actually to reach and resolve issues not preserved below, the result would not only permit the hearing on appeal of issues that might be deemed "basic and fundamental", a concept supposedly discarded in *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), but to hear any reason for a new trial which might have been reasonably believed to advance a client's interests.