Carabello Appeal.

Argued September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stephen Arinson,* Chief Deputy City Solicitor, with him *Arnold I. Kalman,* Assistant City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellant.

*Mark J. Biros,* Assistant Attorney General, with him *J. Donald McCarthy* and *Nancy J. Moore,* Assistant Attorneys General, and *Walter M. Phillips, Jr.,* Deputy Attorney General, for appellee.

Opinion by Van der Voort, J., February 18, 1976:

This is an appeal from a lower court Order denying the Appellant's Motion to Quash a Subpoena. The Subpoena (No. 1190) was issued in connection with the proceedings of the January, 1974 Special Investigating Grand Jury.[1] The appellant moved to quash the subpoena on grounds more fully set forth later in this Opinion. After argument on the appellant's Motion, the lower court declined to quash the subpoena. In doing so, the Honorable Matthew W. Bullock, Jr., in his Order, stated the belief that a controlling question of law, to which there is substantial ground for difference of opinion, existed and that immediate appeal from his Order would materially advance the ultimate termination of the matter. In so doing, Judge Bullock certified this appeal as appropriate for immediate appellate review, pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Section 501, 17 P.S. §211.501. Although ordinarily, an Order denying a request to quash a subpoena is interlocutory, and hence, unripe for appeal (See *United States v. Ryan*, 402 U.S. 530, 91 S. Ct. 1580, 29 L.Ed.2d 85 (1971) ; *In re: Petition of Specter*, 455 Pa. 518, 317 A.2d 286 (1974)), special allowance for appeal was granted by this Court in this case because of the important and controlling questions of law raised by this appeal and several others raising identical issues.

Appellant moved to quash the subpoenas on several grounds. Especially emphasized by appellant is his first contention that the subpoena in question was invalid since it was allegedly not issued by a lawful procedure.[2] Both the appellant and the Commonwealth agree that the

---

1. See In re: *Investigation of January, 1974 Philadelphia County Grand Jury*, 458 Pa. 586, 328 A.2d 485 (1974).

2. This identical claim has been raised in other appeals to our Court, but *in the instant case*, as noted above, the lower court has certified this interlocutory issue as appropriate for immediate review.

Assistant Attorney General, acting as counsel to the Grand Jury, obtained, from the Clerk of Quarter Sessions of the Court of Common Pleas of Philadelphia County, subpoenas signed and sealed by the Judge supervising the Grand Jury. Other than the signature and seal, the subpoenas were blank. The counsel to the Grand Jury then filled in the subpoenas with names of witnesses desired and items, documents and records sought; return dates were similarly filled in and the subpoenas were then served. The appellant contends that this practice was improper and claims that actual judicial approval is necessary by the supervising judge, of the persons or matters sought to be subpoenaed, *prior to* the issuance of the subpoena. While appellant has skillfully argued this issue by brief and oral argument, we do not believe his contentions have merit.

As appellant has pointed out, the assigned judge has a duty to be diligent in his supervision and control of proceedings of an investigating Grand Jury. See *Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 325 A.2d 289 (1974); *Commonwealth v. Hubbs,* 137 Pa. Superior Ct. 229, 8 A.2d 611 (1939). Of course, the judicial supervisory role includes within its purview the subpoena process. However, contrary to arguments raised by appellant, we must hold that the judge has no duty to investigate the propriety of each subpoena *prior to* its issuance.

The customs and practice with respect to subpoena procedure are long-standing and well-known in judicial proceedings. When any party to a judicial proceeding desires a subpoena to compel the testimony of a witness or the production of some matter, he sees the appropriate officer of the court to secure a blank subpoena form. He then fills in the appropriate blank spaces and has the form properly served. Our statutes provide for issuance of subpoenas; the Act of June 16, 1836, P.L. 784, §22 (17 P.S. §2079) states:

## "ISSUE OF WRITS OF SUBPOENA

Each of the said courts is empowered to issue writs of subpoena, under their official seal, into any county of this commonwealth, to summon and bring before the respective court any person to give testimony in any cause or matter depending before them, under the penalties hitherto appointed and allowed in any such case by the laws of this commonwealth."

Beyond this broad statutory provision, the statutes and rules of procedure provide scant guidance with respect to practices involved in the issuance of subpoenas. Rule 144 (a) of the Pennsylvania Rules of Criminal Procedure empowers "issuing authorities"[3] such as district justices to issue process for witnesses at the preliminary hearing stage of a criminal case.[4] In civil cases, our practice is partially guided by Rules 234 and 1357 of the Rules of Civil Procedure which provide the form to be used for subpoenas. While not specifically set forth in our written statutes or rules, our subpoena process has nonetheless evolved, as stated above, into a set and orderly procedure, uniformly followed in our courts. It has been held that a settled usage universally acquiesced in throughout the Commonwealth over a long period of time, may assume the proportions of a common law rule. *Commonwealth v. Hubbs, supra,* 137 Pa. Superior Ct. at 236, 8 A.2d at 614-615. It is clear that subpoena practice in our Commonwealth has so evolved and may be considered to be a common law rule. Our legislature, which has not acted

---

3. See Pennsylvania Rule of Criminal Procedure 3(i) for the definition of "issuing authority."

4. No individual, including a district attorney or even the Commonwealth's Attorney General has the power to *issue* subpoenas without express statutory authority; this power is solely a judicial one in the absence of statute. See *Commonwealth ex rel. Margiotti v. Orsini,* 368 Pa. 259, 81 A.2d 891 (1951), where the Supreme Court held it improper for the Attorney General to attempt to subpoena an individual to appear at his offices for an investigation.

to change the practice over the great length of time it has existed must be held to have acquiesced in its continuance.[5]

While dismissing appellant's claims regarding the *procedure* followed in subpoena practice, we must nonetheless examine appellant's *substantive* claims that the procedure followed worked to deny him (and others) of rights. Appellant contends that by not reviewing the proposed testimony sought of each prospective witness and the relevancy of any other matter sought *prior to the issuance of each subpoena,* the supervising judge is abdicating his responsibilities to supervise Grand Jury proceedings. It may not be denied, as stated earlier, that the lower court certainly has the clear responsibility to supervise Grand Jury proceedings to avoid abuses, including abuses in the use of subpoenas. See *Commonwealth v. Columbia Investment Corp., supra; McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936); *Commonwealth v. Hubbs, supra.* However, the appellant has not convinced us that the court cannot perform this vital function, and provide the necessary safeguards to those served with subpoenas, by entertaining and considering appropriate motions to quash or limit the scope of a subpoena *after* it is served. Appellant would have us mandate a two step procedure for court review of each subpoena where a single step is more than adequate to prevent abuse. The appellant's rationale, if logically extended, would compel the conclu-

---

5. The Federal Courts, which have followed an identical mode of practice, have set forth the procedure in Federal Rule of Civil Procedure 45(a): "FOR ATTENDANCE OF WITNESSES; FORM; ISSUANCE. Every subpoena shall be issued by the clerk under the seal of the court, shall state the name of the court and the title of the action, and shall command each person to whom it is directed to attend and give testimony at a time and place therein specified. The clerk shall issue a subpoena, or a subpoena for the production of documentary evidence, signed and sealed but otherwise in blank, to a party requesting it, who shall fill it in before service."

sion that a two step process is necessary in not only special investigating Grand Jury proceedings, but in virtually every other criminal or civil proceeding wherein subpoenas are used in our Commonwealth. The astounding waste of the judiciary's personnel and facilities, if such a proposition were adopted, is readily apparent. We must reject the appellant's claims.

The appellant has also raised an issue on appeal, which, in simplified terms is aptly described by the lower court as an assertion "... that it has not been established that the subpoena is relevant to the Grand Jury's investigation."[6] As a general rule, of course, such claims are interlocutory at this stage of the proceedings. See *United States v. Ryan, supra; In re: Petition of Specter, supra*. The lower court specifically limited its certification in this case to the first issue discussed above, in this opinion. In view of the interlocutory nature of appellant's second contention and the lower court's refusal to certify that issue as ripe for appeal, we do not deem it proper to review such claims of appellant at this time, but rather limit the scope of our review and decision to the sole issue of procedure discussed earlier.[7]

Affirmed and remanded for further proceedings in the lower court.

———

DISSENTING OPINION BY PRICE, J.:

This appeal presents the same question as in *Tracey Service Co. Appeals, January, 1974 Special Investigating Grand Jury*, 238 Pa. Superior Ct. 476, A.2d

———

6. In raising this claim before the lower court, appellant sought disclosure of information provided to the court in an *in camera* proceeding of the type discussed in *In re: Grand Jury Proceedings*, 507 F.2d 963 (3d Cir. 1975).

7. We do, however, for the guidance of the parties and the lower court, refer attention to our decision in *Salvitti Appeal, January, 1974 Special Investigating Grand Jury*, 238 Pa. Superior Ct. 465 (1976).

(1976) with the exception that the lower court certified this question pursuant to Section 501 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. V, §501 (17 P.S. §211.501). I would decline the exercise of our discretion, and for the reasons I have stated in *Tracey Service Co. Appeals, supra,* I would decline permission to take this appeal.

I would quash the appeal.

HOFFMAN, J., joins in this dissenting opinion.